Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL HERNANDEZ,** | |
| Plaintiff, | Civil Action No. 18-1488 (ES) |
| v. | OPINION |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Michael Hernandez's ("Plaintiff's") appeal of the Commissioner of Social Security's (the "Commissioner's" or "Defendant's") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 423 ("the Act"). (*See generally* D.E. No. 1). The Court has subject-matter jurisdiction under 42 U.S.C. §§ 405(g) & 1383(c)(3). And the Court decides this matter without oral argument. *See* L. Civ. R. 78.1(b).

For the reasons discussed below, the Court REVERSES and REMANDS.

**I.    Factual and Procedural Background**

In May 2014, Plaintiff completed applications for DIB and SSIB, alleging disability beginning August 26, 2012. (D.E. No. 9, Administrative Record ("R."), at 176–84). The applications were initially denied in August 8, 2014 and denied again on reconsideration on December 9, 2014. (*Id.* at 32 & 95–114). Plaintiff requested a hearing, which was held before Administrative Law Judge Meryl L. Lissek ("the ALJ") on August 10, 2016. (*See generally id.* at

44–77). The ALJ issued an unfavorable decision on January 6, 2017, ruling that Plaintiff was not disabled within the meaning of the Act because he "has the residual capacity to perform light work." (*See id.* at 35 & 39). Plaintiff appealed the unfavorable decision; and the Appeals Council issued a final decision affirming the ALJ's ruling. (*Id.* at 9–12).

Plaintiff filed the instant appeal on February 2, 2018. (*See generally* D.E. No. 1). The principal contentions in support of the appeal are that "the ALJ did not obtain a knowing waiver" of Plaintiff's right to representation and that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. (*See, e.g.*, D.E. No. 15 ("Pl. Br.") at 2). Defendant filed an opposition brief. (D.E. No. 18 ("Def. Br.")).

## II.     Legal Standard

### A.     Five-Step Disability Determination Process

To receive DIB or SSIB under the Act, a claimant must show that he is "disabled" within the Act's definition and that he was insured under the relevant program "at the time of onset of his disability." *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§

404.1520 & 416.920).  "The claimant bears the burden of proof for steps one, two, and four [and the] Commissioner bears the burden of proof for the last step."  *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends.  *See* 20 C.F.R. § 416.920(a)(4).  The Court details the steps below.

*Step One*.  First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment.  20 C.F.R. §§ 416.920(a)(4)(i) & 404.1520(a)(4)(i).  If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience.  20 C.F.R. §§ 416.920(b) & 404.1520(b).

*Step Two*.  Second, the claimant must show that his medically determinable impairment or a combination of his impairments was "severe" as of the date last insured ("DLI").  20 C.F.R. §§ 416.920(a)(4)(ii) & 404.1520(a)(4)(ii).  A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 416.920(c) & 404.1520(c).  An "impairment or combination of impairments" is *not* "severe" *unless* it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three*.  Third, the claimant must show, based on medical evidence, that his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii).

*Step Four*.  Fourth, the claimant must show that, as of the DLI, he lacked the RFC to perform his past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv) & 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *id.* at 429.

*Step Five*.  Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. §§ 416.920(a)(4)(v) & 404.1520(a)(4)(v).  If the Commissioner finds that the claimant is capable of performing jobs that exist in significant numbers in the national economy, DIB and SSIB will be denied.  *See id.*

**B.     General Standards Governing Benefits**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner."  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  But "[t]he findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive . . . ."  42 U.S.C. § 405(g) (emphasis added).  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Chandler*, 667 F.3d at 359.  And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea*, 370 F.3d at 360.

As observed above, the Court is bound by the ALJ's findings of fact if supported by substantial evidence—"even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  (Even an ALJ's "brief treatment" of a claim for benefits, in a manner that "could be improved upon" and would cause the Court of Appeals to "express concern," could be upheld under the substantial evidence

standard. *See, e.g.*, *Baerga v. Richardson*, 500 F.2d 309, 312–13 (3d Cir. 1974) (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185 (1944)).) "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

But "[a]lthough the ALJ . . . weigh[s] the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). Notably, that rule "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120).

### III.   The ALJ's Decision

At Step One, the ALJ concluded that Plaintiff had last met the insured status requirements of the Act on December 31, 2015; and that Plaintiff had "not engaged in substantial gainful activity" since the alleged onset date of August 26, 2012. (R. at 34).

At Step Two, the ALJ concluded that the Plaintiff suffered from "the following severe impairments: sequelae of MVA while riding a motorcycle, degenerative disc disease ('DDD') in the lumbosacral spine, shoulder injury, rod in the left leg and high cholesterol." (*Id.*).

At Step Three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*). The ALJ also determined that Plaintiff has the

RFC to perform light work, including climbing the stairs occasionally and that "[h]e can work with no contact with unprotected heights and dangerous machinery." (*Id*. at 35).

At Step Four, the ALJ found that given Plaintiff's RFC as discussed at Step Three, and given a vocational expert's testimony, Plaintiff would be incapable of performing his past relevant work. (*Id*. at 37). (Plaintiff worked as a Pharmaceutical Operator, which is considered medium skilled work that was performed at the heavy exertional level. (*Id*.).)

At Step Five, the ALJ found that Plaintiff "has acquired work skills for past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id*. at 38). In making this determination, the ALJ considered the vocational expert's testimony that Plaintiff would be able to perform the requirements of . . . work in the pharmaceutical industry. . . . (*Id*. at 39).

Accordingly, the ALJ ruled that Plaintiff "has not been under a disability . . . from August 26, 2012, through the date of th[e] decision." (*Id*.).

**IV.   Discussion**

The parties dispute whether (A) Plaintiff received adequate notice of his right to representation and knowingly and voluntarily waived that right; and (B) whether Plaintiff's lack of counsel prejudiced him. (*See generally, e.g.*, Pl. Br. at 13–24). The Court analyzes each of these issues in turn.[1]

**A. Notice and Waiver**

A "claimant must be provided with notice of his right to counsel and can waive this right as long as such waiver is knowing and intelligent." *Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*,

---

[1] Because the Court reverses and remands on the basis that Plaintiff's lack of counsel prejudiced him, the Court need not address Plaintiff's alternative arguments for reversal or remand. *See Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *see generally Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155 (3d Cir. 2008).

84 F. App'x 189, 190 (3d Cir. 2003). Plaintiff asserts that he did not receive notice of his right to counsel and that "the ALJ did not elicit an informed waiver of representation." (Pl. Br. at 13–16). The record, however, contradicts those contentions.

On January 28, 2015, to support his request for a hearing, Plaintiff stated "I do not have a representative. I understand that I have a right to be represented and that if I need representation, the Social Security office . . . can give me a list of legal referral and service organizations to assist me in locating a representative." (R. at 134). On February 4, 2015, the Hearing Office Director, Lynn Shellhamer, sent Plaintiff a letter stating:

> [Y]ou may choose to have a representative help you. We will work with this person just as we would work with you. If you decide you have a representative, you should find one quickly so that person can start preparing your case. Many representatives charge a fee only if you receive benefits. Others may represent you for free . . . . We are enclosing a list of groups that can help you find a representative.

(*Id*. at 138). The record reflects that the letter did enclose that list. (R. at 143–44). "This [letter] alone shows that [Plaintiff] was given adequate notice of his right to counsel." *See, e.g.*, *Phifer*, 84 F. App'x at 191; *Taylor v. Comm'r of Soc. Sec.*, No. 16-5033, 2018 WL 2298358, at *7 (D.N.J. May 21, 2018).[2]

Furthermore, Plaintiff waived his right to counsel in a knowing and voluntary manner. At the hearing on August 10, 2016, the ALJ stated:

> I noticed that you're here without a legal representative. You know that you have the right to have a representative but you are not required to have one . . . . I'll give you and your wife a chance to ask any questions that you might have and then you're going to make a decision whether you want to go ahead today without a

---

[2] On March 10, 2016, Ms. Shellhamer sent Plaintiff a letter reiterating his right to representation, but Plaintiff asserts that *that* notice was sent to the wrong address and was received only months later. (Pl. Br. at 18 n.3). Regardless, Plaintiff had received adequate notice in February 2015. *See, e.g.*, *Phifer*, 84 F. App'x at 191; *Taylor*, 2018 WL 2298358, at *7.

> representative . . . or if you would like me to grant you an adjournment to give you a change to get a representative.

(R. at 47). The ALJ also described ways in which counsel could assist Plaintiff—*e.g.*, he or she "could help [Plaintiff] to gather medical records and other documents in support of your case"— and also observed that Plaintiff "would probably qualify for free legal services." (*Id.* at 48). Plaintiff, when subsequently asked, "[W]hat is your decision, Mr. Hernandez?" responded, "[W]e can go—we keep going forward." (*Id*. at 49). That verbal affirmation was sufficient to constitute a knowing and voluntary waiver, *see Phifer*, 84 Fed. App'x at 191; and the record is devoid of evidence that Plaintiff "suffered from mental limitations" that could have undermined its knowing and voluntary quality, *see Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 159 (3d Cir. 2008).

### B. Prejudice

But even given a knowing and voluntary waiver, "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (footnote omitted). An ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003), and a "pro se claimant may be prejudiced by the ALJ's failure to observe this heightened duty." *George v. Comm'r of Soc. Sec.*, No. 13-5179, 2014 WL 3955071, at *4 (D.N.J. Aug. 13, 2014) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)). Several courts have ruled that remand was required when an ALJ failed to discharge this "heightened duty [and] thoroughly examine [a vocational expert]." *See, e.g.*, *id.*; *Yakely v. Astrue*, No. 12-0857, 2013 WL 1010671, at *5 (D.N.J. Mar. 13, 2013) (crediting the argument "that the ALJ should have solicited testimony from a vocational expert" and remanding). In addition, if counsel "would have requested" them, an ALJ has a duty to request and consider probative records or medical opinions

that bear directly on the claimant's claims. *See Vivaritas*, 264 F. App'x at 161. And when a "hearing transcript demonstrates that [the] [p]laintiff did not understand [a] relevant medical timeframe," remand may also be warranted. *See, e.g.*, *Hopson v. Comm'r of Soc. Sec.*, No 16-6042, 2018 WL 1446405, at *7 (D.N.J. Mar. 23, 2018).

Here, the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *see Reefer*, 326 F.3d at 380, and Plaintiff was prejudiced "by the ALJ's failure to observe this heightened duty." *See George*, 2014 WL 3955071, at *4 (citing *Dobrowolsky*, 606 F.2d at 407). For instance, after receiving testimony from the vocational expert (R. at 58–75) that the ALJ herself recognized was "complicated" (*see* R. at 75)—and that Plaintiff has characterized as "highly prejudicial" to his claim (Pl. Br. at 11)—the ALJ simply asked Plaintiff, "Did you have any questions you wanted to ask to the Vocational Expert?" (R. at 75). The ALJ did not ask any questions reflective of the ALJ's duty to "assume a more active role," *see Dobrowolsky*, 606 F.2d at 407—particularly given Plaintiff's own lack of questions (*see* R. at 75)—and quickly ended the hearing thereafter (*see id.* at 75–77). This failure to "thoroughly examine" the vocational expert militates in favor of remand. *See, e.g.*, *George*, 2014 WL 3955071, at *4; *Yakely*, 2013 WL 1010671, at *5.

Moreover, Plaintiff has identified records—including Plaintiff's hospitalization records related to a motor vehicle accident very close in time to the claimed onset date of disability in 2012 (*see, e.g.*, R. at 61–62)—that were not in the record before the ALJ but that Plaintiff contends were among the "most crucial records" related to his claim. (*See* R. at 42–43 (listing medical record exhibits considered in the ALJ's decision, but not including any records from 2012); Pl. Br. at 21–22). The ALJ, apparently, "did not request [the hospitalization] records, nor did she seek a contemporary medical opinion." *See Vivaritas*, 264 F. App'x at 161; (*see also* R. at 62

(recognizing that "[t]he earliest records we have" of hospitalization are from 2013)).[3] The failure to request and consider those records also militates in favor of remand. *See, e.g.*, *Vivaritas*, 264 F. App'x at 161.

Finally, Plaintiff "did not understand [a] relevant medical timeframe"—the date last insured—as evidenced by the absence of reference to it during the hearing (*see* R. at 44–77) and Plaintiff's subsequent "hand-deliver[ing] to his local SSA office a series of *2017* x-rays" (*see* Pl. Br. at 22–23 (emphasis added)). *See, e.g.*, *Hopson*, 2018 WL 1446405, at *7. The "cumulative effect of the foregoing" requires remand. *See id.*

## IV. Conclusion

For the above reasons, the Court REVERSES and REMANDS "the matter to the Commissioner to develop the record further." *See Vivaritas*, 264 F. App'x at 161 (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002)). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *see Reefer*, 326 F.3d at 380, and Plaintiff must not be prejudiced by any "failure to observe this heightened duty." *See George*, 2014 WL 3955071, at *4 (citing *Dobrowolsky*, 606 F.2d at 407).

An appropriate order will accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] The record suggests that the ALJ issued a subpoena to one "Dr. Luna" on August 12, 2016. (R. at 78–81). But the return of service for the subpoena was not completed (R. at 81); and it is unclear why the ALJ would subpoena Dr. Luna—who provided Plaintiff medical services beginning only in 2015 (*see, e.g.*, R. at 43 & 273–96)—but not, for instance, St. Joseph's Hospital, where Plaintiff testified he was hospitalized after a motor vehicle accident in 2012 (*see* R. at 61–62).